Good morning and welcome to the 11th Circuit on the final day of our sitting here in Montgomery. Judge Wilson and I have been here all week, but we're honored to be joined today by Judge Dabena, Montgomery's own Judge Dabena. Y'all are the star attraction, we have one case on for today. I'm sure you're familiar with our timer system and the traffic light, yellow means you have two minutes left, red means wrap up what you're saying, I'll finish answering the judge's question if there's one before you, but otherwise stop. We are familiar with your briefs and the case, I don't feel like you need to familiarize us with the facts. So, our only case for today is number 2411754, Foster v. Emberg, and we have Mr. Cowell for the appellate. All right, you saved three minutes, you may begin. Judges Dabena, Wilson, and Kidd, may it please the Court, my name is Mark Cowell, and I along with my co-counsel, Fred Clements, we represent Deputy Emberg in this case. The core question and the main topic that I think we're going to be discussing this morning is whether the Alabama Supreme Court's recent decision in Ex parte Underwood is dispositive on this case, and answers the question once and for all, whether state immunity applies. Let me ask you this before we get to Underwood, which I have read, we're all very familiar with the law in Alabama. The sheriffs are unique because they're considered constitutional officers, they're part of the executive branch of government, and as long as they act in the line and scope of their employment, they're ordinarily granted state immunity or sovereign immunity, however you want to call it. But there are exceptions to that. In fact, the Supreme Court of Alabama has created six exceptions. And before we get to the exceptions, the other thing important about this case, we're here on an interlocutory appeal from a motion to dismiss where your client was denied immunity. So this is the amended complaint, and we have to accept everything in this complaint is true. It might not be true, but on a motion to dismiss, we have to accept it as true. And I've read this amended complaint twice, and several things jump out at me. First, as far as the woman who was arrested, if you look at paragraph 37 of the complaint, Jeremy, who was the husband, as I understand it, of this woman, did not agree with Enberg your client's decision and told him, I don't know why y'all are doing her any favors, Kevin. She's filing a complaint against you with the sheriff because you said, she said you were bullying her the other night when you were out here. This was his second trip to the house, as I understand it. And Enberg responded, oh, really? And immediately arrested Chantel Foster and placed her in handcuffs. Now what jumps off the page at me about that is, that looks to me like personal animus. There's no other reason he had to arrest her at that point, except he was upset because he learned for the first time she filed a complaint against him with the sheriff. And then if you go over again, we have to accept that is true. It might not be true, but we have to accept it on a motion to dismiss. You go over to paragraph 48, Enberg knew that neither Chantel Foster nor Jeremy Foster had committed a crime. However, he had applied for a job as a probation officer at the Jasper office for the Alabama Bureau of Pardons and Paroles and believed he would stand a greater chance of being hired if Jeremy Foster was arrested or lost his job. That might not be true, but on a motion to dismiss, we have to accept it as true. If that's true, that seems to me to be personal animus, too. So why wasn't the district court correct in denying your motion to dismiss and in denying your client's state of immunity? Yes, Your Honor. So there's a couple of things I'd like to unpack, if you don't mind, and if you'll kind of indulge me, I'd like to step back to the very first, I think, statement that you made about state immunity. First, you're correct that Alabama sheriffs are, and their deputies, as their alter ego, are considered constitutional officers based on their position as listed within Article 5, Section 112 of the executive branch. We even have precedents that say that. Correct. That's right. But you made a statement that there are six exceptions, and that's where I'm going to jump to a footnote in Underwood. It's footnote 10 in that case. They addressed whether that so-called, and really an exception is a misnomer. It's really an instance where the suit is not against the state of Alabama, but for simplification purposes, they said that that sixth so-called exception that was set forth in Ex Parte Multin back in 2013 is not applicable to these officers. That language, that so-called sixth exception. Is personal animus applicable to these officers? Yes, and I'll get to that in just a second. But it's important first to note, because it goes back to, again, the allegation that's in the complaint about the only state tort that remains in this case, which is malicious prosecution. And the so-called sixth exception was for, you know, officers, state officials. It's identical to that last exception at Ex Parte Cranman, that catch-all exception for state agent immunity. That when an officer or state official acts under bad faith, you know, mistaken interpretation of the law, they're not entitled to state agent immunity. Now, in Ex Parte Multin, they used Article I, Section 14 language, and I think that's where that sixth exception kind of bled into being, you know, district courts were applying it to deputies. And there was also a case in 2020 from the Alabama Supreme Court where they considered that argument, but they did not hold specifically that that sixth exception applies to them. So just as an initial matter, I wanted to kind of make the statement and make it clear that only remedies in equity, so, you know, either to stop the sheriff from doing something or his deputy or to require him to do something or for relief under declaratory judgment, prospective relief, those are the only types of relief where the suit is not going to be in essence against the state of Alabama. So that's just one thing I'd like to note off the beginning. Now, you bring up the issue of the statement made by Jeremy Foster and whether, well, so if there's only five exceptions and the deputy is entitled to immunity when he's acting in the course and scope of his official duties or the line and scope of his employment, they've used that language interchangeably, then it will be a suit against the state of Alabama. The court has, like in Alexander v. Hatfield, there was a case where not enough information was brought before the Alabama Supreme Court, either in the affidavit submitted on the factual attack of subject matter jurisdiction that established that the officer was in the line and scope of his employment. So the court denied a mandamus petition in that case because they said, for example, the plaintiff could show he was outside the course and scope of his employment, he could be on a personal errand, and the court has, you know, expanded that a little bit in Ex Parte Davis and reaffirmed it in Underwood that a personal animus can be something that removes the officer from the line and scope of his employment, okay? So to answer your question, yes, absolutely, that can be a part. And I think the best example of that is the case, or one of the best examples, is the case that's actually relied upon by the appellee, the Cooper case, where there's an allegation that, you know, deputies, you know, did not, they were not trying to apprehend a criminal or a suspect. They rammed into somebody's vehicle, pulled him from the car, and beat him senseless for no other purpose than personal animus, and that was the allegation in that complaint, and the court had to accept that as true. So in those instances, yes, it can. But you made a statement, too, that I would like to push back on a little bit, if you'll There was no other reason why Deputy Emberg would have arrested Chantel Foster and Jeremy Foster after those statements were made. What did they do, what did they do that was illegal that would justify a lawful arrest? So I would like to point out that Deputy Emberg No, answer my question. So what did they do? It was the second instance of a situation that had inflamed and seemingly cooled back off. So while he says that What did they do that was illegal that would justify a lawful arrest? That's what I want you to tell me. I'm not sure that that statement in and of itself was legal, and I guess what I'm pushing back on a little bit is that it doesn't necessarily need to be the correct decision of the deputy to arrest. It might not have been illegal. And his decision What gave him probable cause, or even arguable probable cause, that either one of these individuals did anything illegal that would justify a lawful arrest? Yes, I point you to paragraphs 12 through 14 of the complaint, where the fight initially broke out three days before. In that fight, where they turned around and came back home, they were going out for dinner, they came back, and a weapon was, you know, the allegations of the complaint is that a weapon was brought out. But paragraph 15 He had authority to carry a weapon. He's a probation officer. He did. But He never pointed it at her, never threatened her. Yes, Your Honor. Paragraph 15, though, which is where the nine-year-old son calls 911 and tells the 911 dispatcher that, you know, my mom and my stepdad are fighting and that there's a gun.  So, the emergency dispatch. That's number one. Okay. He didn't choose to go out there on the first night, but he's responding to a call where a nine-year-old child has said, my parents are fighting. There's a gun. You know, somebody said they're not afraid of a gun. So that's number one. Okay. Then things calmed down, admittedly. All right. So you're asking me what gave him probable cause. I'm trying to answer that question. You're talking about the first time. Yes, Your Honor. Judge Savino is asking you about the second time. Yes, Your Honor. I'm getting to that. It's the pattern, okay, that things between these two, and it's a domestic violence situation. It's really difficult to, you know, officers are in a tough spot. They can only know what they know when they get there. And they've got to make judgment calls. The officer was responding to dispatch. Things calmed down. Three days later, he's dispatched again. And this is the instance you're talking about. He didn't hear it on the radio and say, I'm going to go out there, you know, because I have this ulterior motive and I want to make sure this guy gets arrested. Another 911 call from Chantel Foster and him being dispatched. That's in the complaint. He was dispatched again, and he went out there, but he was there for a while before this happened, right? So I don't think you can use sort of the immediacy or, you know, that it's an evolving situation. He'd been there for a while and was able to observe what was going on, and it wasn't until those statements were made and we have his response that he made that arrest, right? Yes, Your Honor. The point that I'm trying to make, though, is even when he's out there and even when things seemingly calm back down again, Mr. Foster and Chantel Foster do not stop arguing. And at that point, he's got to make a judgment call, 36-22-3, which is the statutory provision that provides the general duties of the sheriff, empowers him to make these types of judgment calls. And the Supreme Court in Salt Lake— What about the contention that he fabricated some of the allegations that he relied upon in order to make the arrest? So I think, and that's a good question, Judge Wilson. I understand my time's up, but I'd like to conclude answering your question, is that that speaks more to the second count, the abusive process count, that, you know, the fabrication, all of that is not really necessary to whether he was empowered and whether it was, you know, the conduct that he was doing, you know, even though it might have been improper, but was it wholly pursuant to a personal motive in that moment? I don't think so. It was something that was closely related to his job functions under 36-22-3. And if you look at the specific allegation for the claim that remains, it's that the arrest was made, and it copies identically that language from ex parte multiness, so-called sixth exception that Underwood rejected in the 10th footnote. It said that that sixth exception does not apply. That's what the plaintiff relies upon to establish the claim for malicious prosecution. Thank you. You deserve three minutes for rebuttal. Thank you. Mr. Diamond? Good morning, judges. May it please the court, my name is Seth Diamond, myself and Mr. Tatum. We represent the plaintiffs in this action, Chantel and Jeremy Foster. Did the district court correctly rely on ex parte Pickard when she denied this motion to dismiss? That's correct. Because to me, Pickard has nothing to do with Sherriff's. That's correct. You know, that's a great question. Interestingly, the Long v. Underwood case, we represented John Long, the plaintiff and defense counsel, represented Sheriff Underwood, and we argued that case to the Alabama Supreme Court about a year ago. And at the time when the court made that decision, the district court made the decision in relying on ex parte Pickard, I think that was the correct result. But since the Alabama Supreme Court elucidated or clarified the law in Long v. Underwood, I would say probably not the correct interpretation. If we vacated the district court's order here and sent it back to her and said, you need to apply the correct standard of ex parte Underwood, would it make any difference as far as the end result of whether this deputy is entitled to state immunity or not? Yeah, I don't think it would change the result one iota, he is not entitled to state immunity. Why do you base that on? Because he was not acting within the line of scope of his employment when he arrested the Fosters. And I do want to point out, this court obviously can affirm the district court's decision for any reason, even one that wasn't relied upon by the district court, provided it's supported in the record. And the line of scope issue was thoroughly briefed by the parties to the district court, even though that was not the basis for a decision. But clearly, based on Deputy Enberg's acts and accepting the factual allegations that the complaint is true, he did not arrest the Fosters on a legitimate law enforcement basis. He arrested the Fosters in retaliation upon learning that they are filing a complaint against him with the sheriff. You know, the defendant's argument, they really, when you break it down to its essence, they're conflating the powers of a deputy to act under the pretense of a law versus acting within the line of scope of your employment. And you can have them both at the same time, they're not mutually exclusive. So just because Deputy Enberg had the power to arrest somebody doesn't mean he was acting within the line of scope of his employment or furthering the objectives of his employer when he arrested the Fosters. And I think that's the real difference here, and that's the argument that's getting lost in the forest. Let me ask you a friendly question. Why isn't Underwood distinguishable from what happened in this case? And let me tell you why I say that. The state Supreme Court in Underwood noted that nothing in the sheriff's complaint suggested that the deputy was acting outside the scope of his employment or acting pursuant to some personal motive. In this amended complaint that I read to opposing counsel, there are allegations in here that this deputy was acting pursuant to some personal motive. Wouldn't that distinguish Underwood from this case? It would be distinguishable, and I appreciate you helping me. Why don't you argue that? Remind me of the facts. You know, in the facts in Long v. Underwood, Deputy Brady Miles was chasing a fleeing motorist on a motorcycle going over 115 miles an hour on a winding narrow road in rural Walker County. And our client, John Long, was coming in the opposite direction, and the motorcyclist lost control of his bike, and he failed to negotiate a curve, and he collided with John Long and he died. Not John Long, the motorcyclist died, and our client was injured. And we said that, you know, the complaint was in that case that Deputy Brady Miles exceeded his authority, and he was driving recklessly by speeding and not driving in a safe manner. But the Long court or the Underwood court said, well, regardless of whether Deputy Miles was exceeding his authority, he was still within the line scope of his employment because he was chasing a criminal. And that was distinguishable because in this case, the Enberg and Fosters, Enberg, he had no lawful basis for arresting the Fosters. He was not acting in line scope of employment. He was, when he arrested them, he was gratifying his own self-interest to retaliate against them for filing a complaint with the sheriff. So clearly the cases are distinguishable because Deputy Enberg had no legitimate law enforcement basis to make the arrest. What do we do with paragraph 8 of your amended complaint that says that Enberg committed the challenged conduct while acting pursuant to the customs policies and practices of the Walker County Sheriff's Office? Should that be construed as an admission? That is a great question. And if I got a chance to rewrite that complaint, I would take that allegation out. But what you do with it is this. That is a legal conclusion. And for the purposes of motions to dismiss and ruling on motion to dismiss, the court is to eliminate legal conclusions and to focus in on the factual allegations. And do the factual allegations give rise to an entitlement to relief? And when you look at the factual allegations that are in the second amended complaint, they point to Deputy Enberg acting for personal, out of wholly personal motives as opposed to a legitimate law enforcement purpose. You know, this case is really on all fours with this court's prior precedent in Bradley v. Franklin. That case was in, I believe it was in 2019. It was out of Morgan County where the sheriff had taken out an arrest warrant against a former jail warden who threatened to expose the sheriff that she had been misappropriating public funds, the inmate jail food fund for her own personal private business enterprises because the jailer was disclosing this information to a local media reporter. And the sheriff and the deputies got an arrest and search warrant on false pretenses. And this court ruled that that arrest and the seizure of the former warden was not within a legitimate law enforcement purpose. That that arrest was to satisfy the sheriff and the deputies' wholly personal motives to cover up the fact they had committed a crime and to punish anybody who threatened to expose them. And this court denied granting the deputy defendants and the sheriff state immunity because they said, this court said, state immunity is not infinite. And really, there's not a whole lot of difference. Just because Deputy Enberg had the power to arrest, just like the deputies in Bradley v. Franklin case, they had the power to arrest too. But they're misusing their authority for personal gratification. And that's what takes it outside the landscape of employment. And that's why they're not acting on behalf of the state. And that's why they're not entitled to state sovereign immunity. And at what point would you draw the line? Because I assume you agree that at the point that he was dispatched, he was acting within the line of scope of his employment. But at some point, you argue he was not. So where do you draw that line? When did it move beyond that?  So responding to the 911 call, absolutely. He is legitimately there. But there's no conduct that we allege is actionable at that point. The actionable action is the arrest, where the claim is malicious prosecution. Enberg's arrest of the Fosters, that's where we're drawing the line. Because that was not a legitimate law enforcement basis. That was for his own gratification. He knew they had committed crime. The facts alleged in the complaint are clear that he told the Fosters, or he told Chantel, at least, this is a civil matter. I don't know. You don't call my guys out for this. And of course, Chantel says, well, your guys told me to call you out for this. So he knew at that point there was no probable cause for the arrest. He told her it was a civil matter, but he went and did it anyway. Do the judges have any more questions, because I've said everything that I want to say. Thank you. Thank you. All right. Mr. Cowell, you reserve three minutes. Yes, Your Honor. I think, Judge Kidd, you were correct to focus on paragraph eight of the complaint. That is not a legal conclusion. In fact, it's a fact that is admitted that the Alabama Supreme Court explicitly relied upon. We have the same counsel in this case as we did in that case on both sides. And that allegation is verbatim to the allegation that was relied upon by the Alabama Supreme Court, along with the totality of the circumstances regarding Deputy Miles and what he was doing in that case. Which is why I emphasize the totality of both instances, where both times this deputy is dispatched. Well, I guess it's a little different from Underwood, right? Because in Underwood, the court noted that the complaint did not allege that the deputy's actions were undertaken for some personal motive. Whereas here, there is that allegation and, you know, construing the facts in the light most favorable to, or construing the facts in the plaintiff's favor, shouldn't that lead us to go in that direction if there was a personal motive? No, Your Honor. Well, only if there's a wholly personal motive. So the Alabama Supreme Court has been crystal clear about that, about when an employee leaves the line and scope of their employment to pursue a personal motive. It's got to be wholly, and they use that word, wholly personal to a personal motive. That goes back to the 1970s in a employment case called Salmica of the Gulf Coast v. Braggs. And additionally, you know, when it's problematic to look at the subjective intent of a particular deputy because that would, to a degree, require a merits analysis of what, you know, the deputy was thinking when this is an immunity from suit. This is state immunity that applies in the course and scope of the officer's employment. It might not be the right call to arrest these people. And I would point the court, and if you don't, if you'll indulge me for a minute, I'll read from the case Dahlgren Corp. LLC v. Spence, which is cited by the Alabama Supreme Court in answering this line and scope test, says, quote, an employee's tortious acts occur within the scope of his employment if the acts are so closely connected with what the servant is employed to do and so fairly reasonably incidental to it that they may be regarded as methods, even though quite improper ones, of carrying out the objectives of the employment. So I think in answering the question about whether this deputy was acting in the course and scope of his employment, this court needs to continue with what it has done, you know, in interpreting, you know, Article I, Section 14 immunity and observe whether he was carrying out the objectives of his employment or was he acting wholly pursuant to a personal animus. When it's analyzed in that way, the question is that deputy, it might not have been the right call, but he had arguable, palpable cause to arrest these individuals, and we ask that you reverse the district court and grant state immunity in this case. Thank you. This case will be taken under submission, and that concludes our session for today, this week. All rise.